BOHLKA *v.* BOHLKA.

1. DIVORCE—CREDIBILITY OF WITNESSES—SUPREME COURT.

Where determination of a divorce suit rests largely on the credibility of the witnesses, including the parties themselves, the trial court's conclusions, reached after observing the parties and other witnesses, should not be disturbed where Supreme Court is not convinced it would have reached a different conclusion had it been sitting as a trial court.

2. SAME—EXTREME CRUELTY—EVIDENCE.

In husband's suit for divorce on ground of extreme and repeated cruelty, where his testimony was corroborated by witnesses who were apparently disinterested and contradicted only by defendant wife and her testimony, in some particulars was admittedly untrue, trial court's conclusion that plaintiff was entitled to divorce is not disturbed on appeal.

3. SAME—EXTREME CRUELTY—CONTINUED COHABITATION.

    Acts of extreme and repeated cruelty on part of wife, on the basis of which relief was granted plaintiff husband, and which were continuous during the period of time that the parties lived and cohabited together did not bar granting relief to husband where his continuance in living with appellant in the marital relation was apparently in the hope of avoiding a final separation, condonation, implying forgiveness for offensive conduct, being conditional on the nonrepetition of such conduct.

4. SAME—COSTS.

    No costs are allowed husband upon affirmance of decree of divorce on wife's appeal.

Appeal from Lenawee; Rathbun (George A.), J. Submitted April 9, 1947. (Docket No. 30, Calendar No. 43,468.) Decided June 27, 1947.

Bill by Robert C. Bohlka against Dolores Bohlka for divorce on ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Frank J. Riley,* for plaintiff.

*Wm. Kent Fenton,* for defendant.

CARR, C. J. The parties to this case were married on January 13, 1943. At that time plaintiff was a resident of Blissfield, Lenawee county, Michigan, where he was engaged in business, and he continued to live there following the marriage. Defendant resided in Toledo, Ohio, until January, 1944, at which time the parties established a home together in Blissfield. Two or three months after the marriage defendant started a divorce suit in Ohio, the case being discontinued in September, 1943. Following the establishment of a residence in Michigan they continued to live together until June, 1945.

No children were born of the marriage. The parties owned household furniture and were also tenants by the entireties of their home, which the record indicates was worth, approximately, $3,500. Plaintiff also owned a vacant lot worth approximately $250, and a reasonably profitable ice and coal business.

Plaintiff filed suit for divorce in July, 1945, charging in his bill of complaint that defendant had been guilty of conduct towards him amounting to extreme and repeated cruelty. He alleged specifically that she had called him vile and improper names, had sworn at him on occasions, had wrongfully accused him of improper associations with other women, had embarrassed and humiliated him by creating scenes in public places and, in general, had made his life unbearable by her nagging, quarrelsome disposition. Defendant filed an answer denying the charges made against her, and, also, a cross bill in which she alleged that plaintiff and cross-defendant had been guilty of physical violence toward her on different occasions, had called her vile and profane names, and had made threats against her. She claimed in her pleading that plaintiff and cross-defendant had been guilty, generally, of such a course of conduct as constituted extreme and repeated cruelty towards her. Plaintiff and cross-defendant filed his reply to defendant and cross-plaintiff's answer and, by his answer to the cross bill, denied the charges made against him.

On the trial of the case plaintiff and cross-defendant testified in support of the allegations of his bill of complaint and in refutation of the charges made against him. His testimony was corroborated in certain respects by witnesses who, so far as the record discloses, had no interest in the outcome of the case. Defendant and cross-plaintiff was a wit-

ness in her own behalf, testifying in accordance with the allegations contained in her pleadings. Her testimony was not corroborated by other witnesses, except with reference to the condition of the furnace in the home, which she claimed to have replaced at her own expense.

After listening to the parties and their witnesses the trial court rendered a decree granting a divorce to plaintiff and cross-defendant on the grounds alleged in his bill of complaint. By the terms of said decree the home of the parties was given to plaintiff and cross-defendant and he was required to pay the sum of $750 to defendant and cross-plaintiff in lieu of dower and by way of property settlement, together with the further sum of $295.50 as reimbursement for the cost of the furnace, and an attorney fee in the sum of $50. The household furniture was awarded to defendant and cross-plaintiff. From such decree she has appealed. No complaint is made with reference to the division of the property interests of the parties but it is claimed that under the proofs the trial court was not justified in granting a decree of divorce to appellee.

On behalf of appellant it is insisted that appellee was guilty of conduct of such character as precluded the granting of relief to him, that the parties were mutually at fault, and that the evidence "required the court to deny a divorce to either party." The argument rests on the assumption that appellant's testimony with reference to the marital difficulties of the parties was, in its main details at least, a correct presentation of the actual situation. Such testimony was contradicted, however, not only by appellee but by disinterested witnesses. Two of the latter testified positively to a scene created by appellant on a public street in Blissfield at which time she assaulted appellee and struck him with

her purse. Appellant denied the occurrence. She also claimed that on a certain occasion in Toledo, shortly after the marriage, appellee assaulted her and broke her wrist. Her testimony in this regard was contradicted by appellee, and, also, by a witness in his behalf. These witnesses were apparently disinterested. No reason is apparent why they should have deliberately falsified their testimony.

Appellant's testimony was further impeached by her admissions on the witness stand with reference to the number of times that she had been previously married and, also, as to her ownership of real estate during the marriage. After denying such ownership she was confronted with documentary evidence showing a sale by her of certain property, resulting in her admission that the denial was untrue. She also testified on cross-examination to the effect that she had been married twice prior to her marriage to appellee. Evidence was then produced indicating another marriage, which she finally admitted. Appellee's testimony was not contradicted other than by appellant's version of the difficulties that had occurred between the parties.

In denying a motion for a new trial the circuit judge expressed himself as satisfied that appellee had testified truthfully on the witness stand and that appellant had not done so. The determination of a controversy of this character rests largely on the credibility of the witnesses, including the parties themselves. The trial court in the instant case had an opportunity to observe the parties, as well as the other witnesses, note their demeanor in testifying, and draw conclusions as to the weight to be given the testimony of each. On the record before us we do not think that the conclusions reached should be disturbed. In *Billingsley* v. *Billingsley*, 315 Mich. 417, it was said:

"In the present case there was testimony, which the trial court apparently believed, which established plaintiff's right to a divorce. We have carefully reviewed the record and are not convinced that we would have reached a different conclusion, had we been sitting as a trial court."

This statement may well be applied to the case at bar. See, also, *Brookhouse* v. *Brookhouse,* 286 Mich. 151; *Chubb* v. *Chubb,* 297 Mich. 501; *Johnson* v. *Johnson,* 313 Mich. 195.

It is also contended by appellant that appellee condoned her acts of extreme and repeated cruelty towards him by continuing to live and cohabit with her. Condonation, implying forgiveness for offensive conduct, is conditional on the nonrepetition of such conduct. In the case at bar, the acts of extreme and repeated cruelty, on the basis of which relief was granted by the trial court to appellee, were continuous during the period of time that the parties lived and cohabited together. The fact that appellee continued to live with appellant in the marital relation, apparently in the hope that the parties might avoid a final separation, was not a bar to the granting of relief to him. *Tackaberry* v. *Tackaberry,* 101 Mich. 102; *Austin* v. *Austin,* 172 Mich. 620.

The decree of the trial court is affirmed. In view of the nature of the case, no costs are allowed.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.